**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

EMORY DAVIS, on behalf of himself and oth-
ers similarly situated,

                          Plaintiff,

        -v-                                                3:25-CV-1682 (AJB/MJK)

HEALTHPLEX, Inc.,

                          Defendant.

**Hon. Anthony Brindisi, U.S. District Judge:**

## DECISION and ORDER

### I.        INTRODUCTION

On December 1, 2025, plaintiff Emory Davis ("plaintiff"), who alleges he is not a customer

of defendant, filed this putative class action against defendant Healthplex, Inc. ("defendant"), a

dental benefits administrator.  Plaintiff claims that defendant violated the Telephone Consumer

Protection Act ("TCPA"), 47 U.S.C. § 227, by placing pre-recorded calls to plaintiff's cellular

telephone without his prior consent.  Dkt. No. 1 ("Compl.").

Defendant has moved to dismiss the complaint.  Dkt. No. 15.  The motion has been fully

briefed, Dkt. Nos. 15, 17, 20, and will be considered on the basis of the submissions without oral

argument.

### II.       BACKGROUND

The following facts are taken from plaintiff's complaint, Dkt. No. 1, and are assumed true

for the purpose of assessing the motion to dismiss.

Plaintiff is the subscriber and sole user of cellular telephone number (XXX) XXX-2384,

which he has maintained since approximately March 2019.  Compl. ¶ 10.  Defendant is a dental

benefits administrator headquartered in Uniondale, New York.  *Id.* ¶¶ 8–9.  Beginning no later than 2023, defendant repeatedly placed, or caused to be placed, pre-recorded calls to plaintiff's cellular telephone number.  *Id.* ¶ 11.

On November 22, 2023, defendant placed two calls to plaintiff's cellular number from the number (978) 802-3027.  Compl. ¶¶ 12, 14.  In both calls, defendant delivered materially identical pre-recorded voice messages stating:

> Hello, this is Healthplex with an important message for you.  This message is for the individual whose identification number ends with 6-9-0-0.  We're calling to inform you that your request for dental services has been denied.  Please call your plan dentist to discuss your dental treatment.  If you have any questions, please call Health-plex Monday through Friday from 8 a.m. to 6 p.m.  Eastern time at 800-468-9868.  Thank you, and have a good evening . Goodbye.

*Id.* ¶¶ 13, 15.

Plaintiff received and listened to both messages.  Compl. ¶ 16.  The characteristics of these messages—including their identical content, uniform tone, and mechanical speech patterns—indi-cate that they were pre-recorded rather than live.  *Id.* ¶¶ 17–19.  Certain portions of the messages, such as the recitation of the identification number and callback telephone number, were delivered in a tone distinct from the remainder of the message, further indicating the use of an artificial or pre-recorded voice.  *Id.* ¶ 18.

Defendant continued its calling campaign on December 12, 2023, placing two additional calls to plaintiff's cellular number from the same originating number.  Compl. ¶¶ 22–23.  The first message, delivered at approximately 7:57 p.m., began with the same pre-recorded introduction but cut off prematurely.  *Id.* ¶¶ 25–26.  The second message, delivered approximately one minute later, was substantially identical in content and structure to the November 22 messages, except that it

stated the dental services request had been "approved" rather than "denied." *Id.* ¶¶ 15, 27, 32. Plaintiff received and listened to both messages. *Id.* ¶ 28.

On January 26, 2024, defendant placed another call to plaintiff's number, again delivering a pre-recorded message materially identical to the prior messages, including the same structure, tone, and content. Compl. ¶¶ 33–35. On this occasion, defendant stated that the request for dental services had been "approved." *Id.* ¶ 35. As with the earlier calls, the uniformity of the message content and delivery suggests the use of a pre-recorded voice. *Id.* ¶¶ 37–39.

At all relevant times, plaintiff had no relationship with defendant. He did not have an account with defendant, had never used its services, and had never provided his number to defendant. Compl. ¶¶ 41–45. Plaintiff did not give prior consent to receive calls from defendant, whether by artificial or pre-recorded voice or otherwise. *Id.* ¶¶ 46–47. Plaintiff informed defendant—on an unspecified occasion—that defendant was contacting the wrong phone number. *Id.* ¶ 48.

## III.   LEGAL STANDARD

The Federal Rules of Civil Procedure permit a party to move to dismiss a pleading for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." *Twombly*, 550 U.S. at 555 (cleaned up). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S at 678, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To assess this facial plausibility requirement, the court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and draw all reasonable inferences in favor of the plaintiff, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). In doing so, the court generally confines itself to the facts alleged in the pleading, documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## IV.    DISCUSSION

Plaintiff alleges that defendant "routinely" violates 47 U.S.C. § 227(b)(1)(A)(iii) by "using, or causing to be used, an artificial or pre[-]recorded voice in connection with non-emergency calls it places, or causes to be placed, to telephone numbers assigned to a cellular telephone service, without prior express consent." Compl. ¶ 2. Defendant argues that the calls at issue in this case were exempt under the TCPA because they were made for the "'emergency purposes' of providing vital health information for dental/medical treatments to a person in need of such treatment." Dkt. No. 15-1 ("Def.'s Mem.") at 7. Plaintiff responds that the calls were directed to the wrong individual, did not concern any bona fide emergency as to plaintiff, and, in any event, cannot be characterized as "necessary" to protect health or safety on the face of the complaint. *See generally* Dkt. No. 17 ("Pl.'s Opp.").

Congress enacted the TCPA to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls." S. Rep. No. 102–178,

at 1 (1991).  To that end, the TCPA makes it "unlawful . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service" or to a "residential telephone line."  47 U.S.C. §§ 227(b)(1)(A)(iii), (b)(1)(B); *see also Barr v. Am. Ass'n of Political Consultants, Inc.*, 591 U.S. 610, 615 (2020). ("In plain English, the TCPA prohibit[s] almost all robocalls to cell phones.").

However, the TCPA exempts calls made for "emergency purposes" from its general prohibition against automated calls.  47 U.S.C. § 227(b)(1)(B).  The FCC, which is authorized by Congress to "prescribe regulations to implement the [TCPA's] requirements" subject to various conditions, 47 U.S.C. § 227(b)(2), defines the "emergency purposes" exception as encompassing "calls made necessary in any situation affecting the *health and safety* of consumers."  47 C.F.R. § 64.1200(f)(4) (emphasis added).  This Court is tasked with "interpret[ing] the TCPA under ordinary principles of statutory interpretation" and "affording appropriate respect to the agency's interpretation."  *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025).

As alleged, the calls about which plaintiff complains in his pleading fall squarely within the scope of the TCPA's emergency purposes exception.  The messages at issue concern the approval or denial of a dental services request—information that bears directly on a patient's ability to obtain medical treatment.  As other courts have recognized, communications regarding health insurance coverage implicate significant health and safety concerns.  *See Dennis v. Amerigroup Wash., Inc.*, 2020 WL 618472, at *7 (W.D. Wash. Feb. 10, 2020) (finding that "[t]he myriad ramifications of a sudden loss of insurance coverage, such as the inability to obtain preventative care and the risk of an uncovered health crisis, affect a consumer's 'health and safety'"); *Aguirre v.*

*Optum Health Plan of Cal.*, 2025 WL 3190830, at *4 (C.D. Cal. Oct. 24, 2025) (holding that "receiving information about authorization from a health insurance company emergently relates to an individual's ability to receive medical care under the FCC's promulgated regulation"). These decisions reflect the commonsense proposition that a patient's ability to access medical treatment may turn on the availability of coverage or authorization.

Plaintiff makes much of the fact that the calls were intended for someone other than himself. But that allegation does not remove defendant's calls from the ambit of the emergency exception. The relevant inquiry is not whether the intended recipient was correctly identified, but whether the content and purpose of the call were such that they were "necessary in any situation affecting the health and safety of *consumers*." 47 C.F.R. § 64.1200(f)(4) (emphasis added).

Notably, the governing regulation refers to "consumers" in general terms, not to the particular consumer who happened to receive the call, reinforcing that the focus is on the nature of the communication rather than the identity of the recipient. Indeed, courts routinely reject TCPA claims premised on the notion that misdirected calls fall outside the emergency purposes exception. *See Aguirre*, 2025 WL 3190830, at *6 (explaining that "wrong-number calls do not defeat the emergency purpose exception"); *Lindenbaum v. CVS Health Corp.*, 2018 WL 501307, at *2 (N.D. Ohio Jan. 22, 2018) (finding the emergency exception applicable where defendant made calls to a former customer's number but "that cellphone number had been recycled" and plaintiff "had no relation with the [former] customer"); *Dennis*, 2020 WL 618472, at *7 ("[E]ven wrong-number calls can qualify for the exemption.").

Plaintiff's contention that the emergency purposes exception ceases to apply unless and until the recipient affirmatively notifies the caller of a wrong number does not, as he argues, "flip[] the TCPA on its head." Pl.'s Opp. at 11. Rather, it reflects a straightforward application of the

statutory exception to the type of calls alleged here.  The cases plaintiff cites for the proposition that the TCPA is a strict liability statute address the elements of liability in the ordinary course, but they do not speak to the scope of the statute's express exceptions.  *See N. L. ex rel. Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164, 1167 (9th Cir. 2020); *Penzer v. Transp. Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir. 2008); *Echevvaria v. Diversified Consultants, Inc.*, 2014 WL 929275, at \*4 (S.D.N.Y. Feb. 28, 2014).

The mere fact that a call reached the wrong person does not, by itself, take it outside the emergency purposes exception.  Nor does recognizing the continued applicability of the emergency purposes exception—at least in the absence of notice—improperly shift the burden of compliance to the call recipient.  The relevant inquiry remains focused on the caller's conduct—specifically, whether the call was made for an emergency.

To be sure, the absence of any well-developed allegation that plaintiff informed defendant it had reached the wrong number is not a prerequisite to relief.  But it *is* relevant to whether defendant's conduct can plausibly be characterized as falling outside the exception.  *Cf. Aguirre*, 2025 WL 3190830, at \*6 ("While the Court would not go so far as to say the caller's purpose is the sole consideration at play, in this case the fact that the calls substantively satisfy the exception is sufficient, alongside a further key consideration: [p]laintiff does not allege that []he ever made an effort to communicate to [d]efendant that []he was not the intended caller, or that [d]efendant should stop contacting h[im].").

For instance, several courts have concluded that prescription notifications and similar healthcare-related calls do not qualify for the emergency purposes exception where the recipient has expressly informed the caller that such communications are not wanted.  *See, e.g., St. Clair v. CVS Pharmacy, Inc.*, 222 F. Supp. 3d 779, 780 (N.D. Cal. 2016) ("Continuing to call a customer

(or former customer) about a prescription, when the customer has made clear that he does not want or need the calls, does not fall within the definition of an 'emergency' purpose."); *Coleman v. Rite Aid of Ga., Inc.*, 284 F. Supp. 3d 1343, 1346 (N.D. Ga. 2018) (holding that "the emergency purposes exception to the TCPA does not apply to calls made after [plaintiff] told Rite Aid to stop calling him").  Where, as here, a caller places healthcare-related calls to one particular individual and receives no indication that it has misidentified the recipient, it is reasonable to treat those calls as continuing to serve an emergency purpose.

In an apparent attempt to avoid the application of this exception, plaintiff alleges, in a single sentence, that he "informed Defendant that it was calling the wrong telephone number."  Compl. ¶ 48.  But that assertion is wholly conclusory and devoid of supporting factual content.  The complaint does not allege when plaintiff provided such notice, the manner in which it was conveyed, or to whom it was directed.  Critically, it also fails to allege that defendant placed any calls to plaintiff after receiving this notice.

This cursory allegation stands in stark contrast to the complaint's otherwise detailed recitation of the content, timing, and characteristics of the calls themselves.  In the absence of such supporting factual detail, plaintiff has not plausibly alleged that defendant continued placing calls with knowledge that it had reached the wrong person.  *See Iqbal*, 556 U.S. at 678 (explaining that federal pleading standards require "more than a sheer possibility that a defendant has acted unlawfully.").  Accordingly, this bare allegation is insufficient to bring the challenged calls outside the TCPA's emergency purposes exception, even at the pleading stage.

Plaintiff's preferred approach would effectively impose liability for inadvertent misdirected healthcare communications from the outset, even where the caller has no reason to know of the error.  This result would undermine the TCPA's recognition that certain time-sensitive

communications affecting health and safety should not be deterred. *See, e.g.*, *In the Matter of the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 2736 (1992) (explaining that "[t]he legislative history of the TCPA indicates a congressional intent to interpret the term 'emergency' broadly rather than narrowly."); *see also Dennis*, 2020 WL 618472, at *7 (recognizing that communications affecting access to healthcare implicate significant health and safety concerns); *Aguirre*, 2025 WL 3190830, at *4 (holding that communications regarding treatment authorization "emergently relate[] to an individual's ability to receive medical care").

Finally, plaintiff is correct that the "emergency purposes" exception is generally treated as an affirmative defense on which defendant bears the burden of proof. But it is well settled that a court may grant a motion to dismiss based on an affirmative defense "only when facts supporting the defense appear on the face of the complaint." *In re Nine W. LBO Sec. Litig.*, 87 F.4th 130, 142 (2d Cir. 2023). Thus, the relevant question is not whether defendant ultimately bears the burden of proof on this question, but whether plaintiff's own factual allegations plausibly establish that the challenged calls fall outside the scope of the emergency purposes exception.

Here, the complaint affirmatively alleges that defendant placed multiple calls delivering pre-recorded messages regarding the approval or denial of a dental services request associated with a specific identification number. Compl. ¶¶ 13, 15, 27, 32, 35. Those allegations describe the content and purpose of the calls with enough specificity to permit the Court to assess, as a matter of law, whether the calls implicate "health and safety" concerns.

Where the pleaded facts themselves demonstrate that the calls were healthcare-related and directed to a particular individual, dismissal at the Rule 12(b)(6) stage is not improper merely because the exception is framed as an affirmative defense. And, as discussed *supra*, disruptions in access to healthcare can carry meaningful consequences for a patient's ability to obtain

necessary treatment. *See, e.g., Dennis*, 2020 WL 618472, at \*7. Accordingly, nothing in the complaint plausibly suggests that the calls were unrelated to health and safety concerns so as to fall outside the exception.

Nor does plaintiff's attempt to recast the calls as potentially involving "cosmetic" procedures, Pl.'s Opp. at 17–18, defeat pre-answer dismissal. The complaint does not allege that the underlying dental services were purely elective or unrelated to health; instead, it characterizes the calls in general terms as relating to "dental services" and "treatment." Compl. ¶¶ 15, 20, 27, 35. Absent well-pleaded allegations suggesting that the calls concerned non-medical or purely aesthetic procedures, the Court is not required to speculate in plaintiff's favor to grasp for a non-emergency characterization. *See Iqbal*, 556 U.S. at 678–79 (courts need not accept conclusory allegations or unwarranted inferences).

The burden is not on defendant at this stage to prove the precise medical necessity of the treatment; rather, plaintiff must plausibly allege that the calls were unrelated to health or safety. Plaintiff has not met this burden, and his speculation to the contrary is insufficient to defeat dismissal.

## V.    CONCLUSION

Therefore, it is

**ORDERED** that

1. Defendant's motion to dismiss (Dkt. No. 15) is **GRANTED** in part;

2. Plaintiff's complaint is **DISMISSED** without prejudice.

   The Clerk of the Court is directed to terminate the pending motion, enter a judgment accordingly, and close the file.

- 11 -

**IT IS SO ORDERED.**

Dated:  April 14, 2026
        Utica, New York.

Anthony J. Brindisi
U.S. District Judge